J-S29010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DOUGLAS PARKS | |
| Appellant | No. 1137 WDA 2014 |

Appeal from the PCRA Order June 18, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0012812-2008

BEFORE:  PANELLA, J., MUNDY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED JULY 16, 2015**

Appellant, Douglas Parks, appeals from the order denying him relief on his petition pursuant to the Post Conviction Relief Act ("PCRA").  Parks argues that the PCRA court erred in finding that trial counsel was not ineffective for failing to ask the trial court to provide a **_Kloiber_**[1] instruction to the jury.  We affirm.

A previous panel of this Court, in reviewing Parks's direct appeal, summarized the pertinent facts as follows.

> Appellant was arrested and, on October 20, 2010, represented by counsel, he proceeded to a jury trial at which the victim and numerous police officers testified.  Specifically, the victim, Jeffrey Backus, testified he owns a small used-car dealership in a

_____

[*] Retired Senior Judge assigned to the Superior Court.
[1] **_Commonwealth v. Kloiber_**, 106 A.2d 820 (Pa. 1954).

poverty stricken part of Pittsburgh, and prior to the incident at issue, he was "familiar with" Appellant. Specifically, starting approximately twelve to fourteen years ago, Appellant bought cars from Mr. Backus' dealership, and therefore, Appellant was familiar with Mr. Backus' business practices, which included Mr. Backus making only cash sales and openly stuffing the cash into his socks after the sales.

On August 9, 2008, at 5:15 p.m., as he was closing the dealership for the evening, Mr. Backus went inside of the dealership's trailer to put away keys when he discovered someone wearing a skeleton mask and a hooded sweatshirt standing near the refrigerator. Poking Mr. Backus in the face several times with a BB gun, the person told Mr. Backus to lie down on the floor; however, Mr. Backus refused to do so, resulting in the pair wrestling. While the pair wrestled, the attacker's mask and hooded sweatshirt fell off, and when Mr. Backus would not succumb, the person hit Mr. Backus in the forehead with a floor jack, threatening to shoot him. Mr. Backus begged for his life and finally relinquished some of the money from his socks. Mr. Backus estimated that, prior to the robbery, he had a total of $10,000 tucked into both of his socks, and the robber left with approximately $7,000.

As the robber, who appeared to be the same height or a little taller than Mr. Backus, fled down the left side of Route 51 toward the Liberty Tunnels, Mr. Backus looked out of the trailer and observed the following:

> He was wearing blue jeans and a white sleeveless T-shirt, and it was a black male, and it was someone that had reach on me, especially with the help of a gun, but also he had long arms, and that's pretty much it.
>
> …

[Police arrested Parks near the scene of the crime shortly thereafter. Backus was brought in to identify Parks.] [O]n direct examination, Mr. Backus testified, in relevant part, as follows:

> Q: And what did you see when you arrived?
> A: I saw the perpetrator leaned up against the police car in handcuffs.

Q:Did you get a good look at his face?
A:Yes.
Q:Did you recognize the individual?
A:At that time, I did not, no. It had been years since I had seen that person.
Q:And "that person" is [Appellant]. Correct?
A:Yes.
Q:Okay. When you saw him, what condition was he in and what was he wearing?
A:He was wearing a white sleeveless T-shirt and blue jeans and he was in handcuffs.
                    …
Q:So when you saw [Appellant] in custody, did you believe that he was the perpetrator of the robbery?
A:Yes.
Q:Why?
A:Because of his build, because of what he was wearing, and then the rest of it is circumstantial evidence that you're going to present.
                    …
Q:Did the clothes match the description of the robber that you gave?
A:Yes.
Q:Did the body structure of [Appellant] match the description of the robber that you gave?
A:Yes.
Q:And the jeans and the shirt were collected together. Is there any doubt in your mind that [Appellant] is the person that robbed you?
A:No.
Q:Are you sure?
A:I'm sure.

On cross-examination … Mr. Backus indicated that, after the police arrested Appellant, he went to the scene and identified Appellant as his attacker based primarily on his body structure and clothes. Mr. Backus admitted he did not see the robber's face during the incident; however, based on the fact he and the robber wrestled for three to five minutes, and Mr. Backus watched him flee, Mr. Backus knew his robber's "body structure exactly," and the body structure of Appellant was "exactly the same" as the robber's structure.

*Commonwealth v. Parks*, No. 103 WDA 2011, unpublished memorandum at 2-5 (Pa. Super. filed 11/15/12). A jury convicted Parks on charges of robbery, serious bodily injury and criminal trespass. This Court affirmed Parks's judgment of sentence, and the Supreme Court of Pennsylvania denied his petition for allowance of review.

Parks subsequently filed a timely *pro se* PCRA petition. The PCRA court appointed counsel to Parks, and counsel filed an amended PCRA petition. After providing Parks with a notice of intent to dismiss, the PCRA court denied Parks's petition. This timely appeal followed.

On appeal, Parks raises two issues for our review. Both issues are based upon Parks's contention that trial counsel was ineffective for failing to request a *Kloiber* instruction.

Our standard of review of a PCRA court's denial of a petition for post-conviction relief is well-settled. We must examine whether the record supports the PCRA court's determination and whether the PCRA court's determination is free of legal error. *See Commonwealth v. Hall*, 867 A.2d 619, 628 (Pa. Super. 2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *See Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. 2001). Our scope of review is limited by the parameters of the PCRA. *See Commonwealth v. Heilman*, 867 A.2d 542, 544 (Pa. Super. 2005).

Parks's arguments both assert the ineffectiveness of trial counsel as a basis for relief. We presume that counsel was effective and an appellant bears the burden of proving otherwise. *See Commonwealth v. Steele*, 961 A.2d 215, 223 (Pa. 2007).

> To prevail on his ineffectiveness claims, Appellant must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) Appellant suffered prejudice because of counsel's action or inaction.

*Commonwealth v. Spotz*, 18 A.3d 244, 260 (Pa. 2011) (citations omitted). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Commonwealth v. Morrison*, 878 A.2d 102, 105 (Pa. Super. 2005) (citation omitted). Counsel cannot be deemed ineffective for failing to raise a meritless claim. *See Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014).

"A *Kloiber* instruction informs the jury that an eyewitness identification should be viewed with caution when either the witness did not have an opportunity to view the defendant clearly, equivocated on the identification of the defendant, or has had difficulties identifying the defendant on prior occasions." *Commonwealth v. Sanders*, 42 A.3d 325, 332 (Pa. Super. 2012). When these circumstances exist, "the Court should warn the jury that the testimony as to identity must be received with caution." *Kloiber*, 106 A.2d at 826-827.

Parks contends that since Backus did not see the robber's face, a *Kloiber* instruction was called for, and thus, trial counsel's failure to request one constituted ineffective assistance of counsel. The Commonwealth and the PCRA court argue that a *Kloiber* instruction was not appropriate, as Backus's identification of Parks was consistent and positive. However, it is "well-established that where there is evidence of record upon which a jury could find that the opportunity for positive identification was not good, a defendant is entitled to a *Kloiber* instruction." *Commonwealth v. McKnight*, 453 A.2d 1, 3 (Pa. Super. 1982).

In *McKnight*, an eyewitness testified that he observed the defendant and two other men backing out of the victim's bar, carrying a shotgun and pulling off their masks. *See id*., at 2. It was broad daylight, and he saw them from behind and from a distance of approximately 20 feet. *See id*. He testified that he never saw more than a profile of any of the men. *See id*. Although the eyewitness testified that he recognized the three men and knew the nicknames of two of them, he did not initially supply their names to the police. *See id*., at fn. 1.

In *McKnight*, as in the present case, the Commonwealth argued that a *Kloiber* instruction is only necessary where "a witness has equivocated in his identification or has previously failed to identify the defendant." *Id*., at 3 (quotation marks and citation omitted). Responding to the Commonwealth's argument in *McKnight*, we observed that it omitted the "primary prong" of

the **Kloiber** test: "where the witness is not in a position to clearly observe the [robbers.]" **Id**. (citation omitted). Applying the test, we concluded that the eyewitness's "opportunity to identify the three men was far from optimal" and reversed for a new trial.

In the present appeal, it is undisputed that Backus never had an opportunity to view the robber's face. Furthermore, it is undisputed that Backus did not initially reveal that he knew Parks when he was brought in to identify Parks. During cross-examination, Backus admitted that his identification of Parks, while positive, was not based upon purely unique characteristics:

> Q: … So if there were four strong, lean black men, six foot to six foot two, wearing a white T-shirt and blue jeans, then you wouldn't know which of the four it was because they all shared the common characteristics that you told this jury you used to determine it was him. Isn't that right, sir?
>
> A: There's some truth to what you're saying, yes.

N.T., Trial, 10/20-21/10, at 87. Thus, pursuant to **McKnight**, a **Kloiber** instruction was justified, and there is arguable merit to Parks's assertion of ineffectiveness.

The PCRA court did not hold a hearing on the petition, so we have no basis to evaluate the propriety of trial counsel's strategic concerns, if any, motivating the decision not to request a **Kloiber** instruction. **See, e.g.**, **Commonwealth v. Spotz**, 870 A.2d 822, 833 (Pa. 2005) ("[A]s a general principle, counsel should have a chance to be heard before being declared

- 7 -

ineffective.") Before remanding for such a hearing, we must determine whether Parks has established that he suffered prejudice from this failure.

Parks argues that if the jury had received a **Kloiber** instruction, "it is possible that the jury would have concluded that the victim misidentified Mr. Parks." Appellant's Brief, at 16. After reviewing the testimony and the closing arguments presented by trial counsel, we cannot agree.

Furthermore, the evidence established that Parks was found walking towards Liberty Tunnels away from the scene of the crime. **See id**., at 109. Backus testified that he saw the assailant flee towards Liberty Tunnels. **See id**., at 60. Detective Brian Nicholas testified that when he received the report of a robber fleeing on foot in his direction, he immediately suspected the robber would use a nearby creek bed to avoid detection. **See id**., at 105. The creek bed is at the bottom of a steep hillside that varies in height from approximately 8 feet to 15 feet. **See id**.

As he checked the creek bed, Detective Nicholas observed a black man in jeans and a white T-shirt attempting to climb out from the bottom. **See id**., at 106-107. When the man noticed Detective Nicholas, he began to run away. **See id**., at 109. Detective Nicholas lost sight of the man when he entered nearby woods, but with the assistance of other units, maintained a perimeter. **See id**., at 109-110.

Lieutenant Larry Scirotto was maintaining the perimeter in the direction Detective Nicholas had seen suspect run. **See id**., at 117. He saw

Parks running at a full sprint away from Detective Nicholas's position along railroad tracks. *See id*., at 118. Lieutenant Scirotto ordered Parks to stop, but Parks did not comply. *See id*. Parks again ran into a wooded area. *See id*., at 119.

Lieutenant Scirotto ultimately found Parks next to an abandoned house in the woods. *See id*., at 120. Parks had hidden himself under a piece of plywood behind the house. *See id*. When asked to come out from under the plywood, Parks refused. *See id*., at 121. After a K-9 unit was deployed, Parks complied and showed himself. *See id*. After Parks was apprehended, three 20 dollar bills were found next to him on the ground, and "a pile of money" was found inside a pipe within an arm's reach. *See id*., at 135-136. Furthermore, money was found in Parks's pockets in the amount of $1,214. *See id*., at 138-139.

Based upon these circumstances, we cannot conclude that the absence of the *Kloiber* instruction prejudiced Parks. Trial counsel made Backus's credibility a central issue of the case, and substantial circumstantial evidence pointed towards Parks's guilt. We are convinced that a *Kloiber* instruction would not have changed the outcome of the trial. We therefore conclude that neither of Parks's issues on appeal merit relief.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

- 9 -

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/16/2015</u>